IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID LEE WAGGONER et al., | |
| Plaintiffs, | |
| v. | Case No. 25-CV-254-JFH-SH |
| SCOTT MARSH et al., | |
| Defendants. | |

## OPINION AND ORDER

Before the Court are the second Motion for Temporary Restraining Order (the "second TRO Motion") [Dkt. No. 10] and the Motion for Preliminary Injunction to Block Use of County Funds for Personal Capacity Defense (the "Motion for Preliminary Injunction") [Dkt. No. 12] (collectively the "Motions"), filed by pro se Plaintiffs David Lee Waggoner and Gina Annette Waggoner ("Plaintiffs"). For the reasons set forth, the Motions are DENIED.

## BACKGROUND

On May 21, 2025, Plaintiffs filed a civil complaint against: (1) the Rogers County Government and numerous Rogers County officials (the "County Defendants"); (2) the Oklahoma Turnpike Authority and its Executive Director (the "Turnpike Defendants"); and (3) the Claremore Daily Progress newspaper and its Editor and Publisher (the Newspaper Defendants").[1] Although

---

[1] As set forth in Plaintiffs' complaint, the named defendants include: (1) Scott Marsh in his personal and official capacity as Rogers County Assessor; (2) Jason Carini, in his personal and official capacity as Rogers County Treasurer; (3) Scott Walton, in his personal and official capacity as Rogers County Sheriff; (4) Jeanne Heidlage, in her personal and official capacity as Rogers County Clerk; (5) Ron Burrows, in his personal and official capacity as Rogers County Commissioner; (6) Steve Hendrix, in his personal and official capacity as Rogers County Commissioner; (7) Dan DeLozier, in his personal and official capacity as Rogers County Commissioner; (8) Matt Ballard, in his personal and official capacity as Rogers County District Attorney; (9) Joe Echelle, in his personal and official capacity as the Executive Director of the Oklahoma Turnpike Authority; (10) Emmet Jamieson, in his personal and official capacity as

Plaintiffs' arguments are somewhat confusing, Plaintiffs appear argue that under the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020):[2] (1) Rogers County is without jurisdiction to levy or collect ad valorem property tax in Indian country; (2) the Claremore Daily Progress has damaged Rogers County citizens' reputations by publishing tax delinquency notices and other notices of state and county court actions (where the county and state have no jurisdiction); and (3) the Oklahoma Turnpike Authority has illegally collected tolls on turnpikes crossing Indian country. Dkt. No. 2 at 18-21.

Plaintiffs identify this as a "class action lawsuit," seeking various forms of relief, including injunctive relief and monetary damages, on behalf of themselves and others. *Id.* at 2, 5, 32-34. Plaintiffs define the "class" to include, "All persons or entities who, since July 9, 2020, have owned property, traveled, conducted commerce, resided, or been subjected to state court actions within the boundaries of the Cherokee, Muscogee (Creek), Choctaw, Chickasaw, Seminole, or Osage Nation reservations, and have been subjected to state or county taxation, liens, tolls, foreclosures, defamation, state court judgments, harassment, or civil enforcement by Oklahoma official agency, or subdivision." *Id.* at 5.

Contemporaneously with their complaint, Plaintiffs filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("first TRO Motion"), seeking various forms of relief. Dkt. No. 3. The Court denied Plaintiffs' first TRO Motion because Plaintiffs did not comply with Federal Rule of Civil Procedure 65, which required them to either provide

---

Editor of the Claremore Daily Progress newspaper; (11) Ed Choate, in his personal and official capacity as the Publisher of the Claremore Daily Progress newspaper; (12) the Rogers County Government; (13) the Oklahoma Turnpike Authority; and (14) the Claremore Daily Progress newspaper. Dkt. No. 2 at 1, 5-10.

[2] In *McGirt*, the Court held that large portions of eastern Oklahoma were part of the Creek Nation and, under the Major Crimes Act, subject to exclusive federal jurisdiction for crimes committed by Indians on those lands. *See* 140 S. Ct. 2452, 2459–82 (2020).

Defendants notice of the motion or demonstrate why notice should not be required. Dkt. No. 7 at 2. On May 30, 2025, Plaintiffs filed the second TRO Motion, seeking to enjoin Defendants from "enforcing ad valorum taxes" or conducting a "sheriff's sale" of real estate for delinquent property taxes ("Delinquent Property Tax Sale") on June 9, 2025.[3] Dkt. No. 10 at 8. And on June 3, 2025, Plaintiffs filed the Motion for Preliminary Injunction, seeking to enjoin Rogers County from using county funds for the "private legal defenses" of certain County Defendants sued in their individual capacities. Dkt. No. 12.[4]

## DISCUSSION

Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking preliminary injunctive relief through a TRO or a preliminary injunction must show that: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal quotation marks and citation omitted). The primary goal of preliminary injunctive relief is to preserve the

---

[3] Plaintiffs initially referenced a June 10, 2025, "sheriff's sale" in Rogers County. Dkt. No. 3 at 3-5, 7-8; Dkt. No. 10 at 1-4, 8. However, in a Notice of Erratum, filed June 2, 2025, Plaintiffs state that the sale at issue is actually scheduled for June 9, 2025. Dkt. No. 11. This is consistent with the notice of sale attached as an exhibit to Plaintiffs' complaint. *See* Dkt. No. 2-1 at 113 (giving notice of the resale of real estate for delinquent taxes in Rogers County on the second Monday in June 2025).

[4] After the Court denied Plaintiffs' first TRO Motion, Plaintiffs filed summons returns indicating that nine of the fourteen named defendants were served with the complaint. Dkt. No. 9. The certificate of service included with the second TRO motion indicates that it was served upon nine of the fourteen named defendants [Dkt. No. 10 at 9-10], whereas the certificate of service included with the Motion for Preliminary Injunction indicates that it was served upon eight of the fourteen named defendants [Dkt. No 12 at 7]. The Court is not persuaded that Plaintiffs have cured the Rule 65 notice defects identified in the Court's Order denying their first TRO Motion [Dkt. No. 7]. Nonetheless, even if Plaintiffs had cured those service defects, the instant Motions would be denied for the reasons set forth herein.

pre-trial status quo. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). Injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to the relief requested. *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003). Consequently, the failure to satisfy one factor for obtaining preliminary injunctive relief is dispositive and "a court need not consider the other factors." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 890 (10th Cir. 2021) (declining to consider the remaining factors where plaintiffs failed to show irreparable harm).

Here, Plaintiffs' Motions must be denied because Plaintiffs have not demonstrated that they will suffer irreparable harm absent preliminary injunctive relief. *See First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) ("Courts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered." (alterations and internal quotation marks omitted)).

**I.     The Second TRO Motion**

**a.   The June 9, 2025 Delinquent Property Tax Sale**

Plaintiffs concede that their property "is not targeted" for the June 9, 2025 Delinquent Property Tax sale. Dkt. No. 3 at 3. Nonetheless, they argue and present declarations to show that members of the putative class are at risk of losing their homes if the sale is not enjoined. Dkt. No. 10 at 3-4, 10-10-11, 16-21, 23-28. However, as pro se litigants, Plaintiffs may not assert claims on behalf of others. *See* 28 U.S.C. § 1654 (providing that in federal court, "parties may plead and conduct *their own cases* personally or by counsel" (emphasis added)); *see also Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (noting that a pro se litigant "cannot adequately represent [a] putative class"); *Davis v. Schmidt*, No. 21-3050, 2021 WL 6102096, at *3

(10th Cir. Dec. 23, 2021) ("The right to litigate for *oneself* ... does not create a coordinate right to litigate for *others*.") (quoting *Myers v. Loudoun Cnty. Pub. Schs.*, 418 F.3d 395, 400 (4th Cir. 2005) (emphasis in original)). Because Plaintiffs have not shown that *they* will suffer any harm if the Delinquent Property Tax Sale is not enjoined, the Court finds no grounds to grant such relief.

### b. Ad Valorem Property Taxes

In their complaint, Plaintiffs allege that, since July 9, 2020, "Rogers County has imposed property taxes on Plaintiffs' land totaling $4,150 . . . based on an assessed value of $14,201, despite [Plaintiffs'] protests." Dkt. No. 2 at 19-20. Plaintiffs further allege that although they sent several notices to county officials "detailing the illegality of property taxes," Rogers County, through Treasurer Jason Carini, continued to send tax bills for 2023 and 2024, totaling $3,441.10. *Id.* at 20. According to Plaintiffs, these bills "remain unpaid, placing them at risk of further enforcement, liens, and sheriff's sale." *Id.* Plaintiffs' second TRO Motion is silent as to any irreparable harm they may suffer if the Court does not preliminarily enjoin the levying and enforcement of their property taxes. And the Court does not find any basis in the record for such action. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) ("A plaintiff satisfies the irreparable harm requirement by demonstrating a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." (internal quotation marks and citation omitted)).

## II.   The Motion for Preliminary Injunction

In their Motion for Preliminary Injunction, Plaintiffs' seek to enjoin the use of "public funds" to finance certain County Defendants' "personal defenses," arguing that such use of funds enables ongoing constitutional violations, causing immediate, irreparable harm." Dkt. No. 12 at 2-3. This conclusory statement is insufficient to satisfy Plaintiffs' burden to demonstrate

irreparable harm. *See RoDa Drilling Co. v. Siegal*, 552 F.3d at 1210. And to the extent Plaintiffs point to alleged harm suffered by members of their putative "class," the Court reiterates its earlier point that because Plaintiffs are proceeding pro se, they may not seek relief on behalf of third parties. *See supra* at 4.

## CONCLUSION

Because Plaintiffs have failed to demonstrate that they will suffer irreparable harm if the Court does not grant preliminary injunctive relief sought in the second TRO Motion and the Motion for Preliminary Injunction, they cannot establish that they are entitled to such relief.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Temporary Restraining Order [Dkt. No. 10] and Motion for Preliminary Injunction to Block Use of County Funds for Personal Capacity Defense [Dkt. No. 12] are DENIED.

Dated this 5th day of June 2025.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE