IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID LEE WAGGONER and GINA ANNETTE WAGGONER, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| SCOTT MARSH, et al., | ) ) |
| Defendants. | ) ) |

Case No. 25-cv-00254-JFH-SH

**OPINION AND ORDER**

Before the Court are Plaintiffs' motions to bar joint representation (ECF No. 13) and disqualify various defendants' counsel (ECF Nos. 31 & 38).[1] Plaintiffs' motions lack legal or evidentiary support and will be denied.

**Background and Procedural History**

This case arises out of Plaintiffs' claims against (1) the Rogers County Government and certain Rogers County officials[2] (the "County Defendants"); (2) Rogers County District Attorney Matt Ballard, in his individual and official capacities ("Ballard"); (3) the Oklahoma Turnpike Authority and its executive director, Joe Echelle ("Turnpike Defendants"); and (4) and the Claremore Daily Progress newspaper, its editor, and publisher (the "Newspaper Defendants").[3] (ECF No. 2.) Plaintiffs' complaint alleges that,

---

[1] This case has been referred to the undersigned for all further proceedings in accordance with 28 U.S.C. § 636. (ECF No. 58.) The pending motions are pretrial matters subject to § 636(b)(1)(A).

[2] These include Rogers County Assessor Scott Marsh; Rogers County Treasurer Jason Carini; Rogers County Sheriff Scott Walton; Rogers County Clerk Jeanne Heidlage; and Rogers County Commissioners Ron Burrows, Steve Hendrix, and Dan DeLozier, each in their individual and official capacities. (ECF No. 2.)

[3] This includes Claremore Daily Progress (CNHI corporate media); Emmet Jamieson, editor; and Ed Choate, publisher. (ECF No. 2.)

in light of *McGirt v. Oklahoma*, 591 U.S. 894 (2020), (1) Rogers County lacks jurisdiction to levy or collect ad valorem tax in Indian country; (2) the Claremore Daily Progress published tax delinquency notices and other notices from state and county court actions affecting Rogers County citizens that are void due to lack of jurisdiction; and (3) the Oklahoma Turnpike Authority may not collect tolls on turnpikes that cross Indian country. (*Id.* at 19–22.[4])

Upon being served, counsel for Defendants entered their appearances. Relevant to Plaintiffs' motions, the County Defendants are represented by Thomas LeBlanc and Matthew Free (ECF Nos. 25–26), while Ballard is represented by Oklahoma Assistant Attorneys General Alejandra Brigida and Devan Pederson (ECF Nos. 36–37, 49).[5]

Plaintiffs have now filed a motion to bar the joint representation of individual County Defendants and Ballard (ECF No. 13); to disqualify LeBlanc and Free (ECF No. 31); and to disqualify Brigida and Pederson (ECF No. 38). Plaintiffs argue joint representation is improper under Oklahoma Rule of Professional Conduct ("ORPC") 1.7, which prohibits representing a client if that representation involves a concurrent conflict of interest.[6] (ECF No. 13 at 2–3.) Plaintiffs further contend that attorneys Brigida and Pederson should be disqualified from representing Ballard based on their alleged misuse of public funds; failure to produce valid oaths and bonds; violation of ORPC 1.7 and 1.13; violation of numerous civil and criminal federal statutes; and fraud on the court. (ECF No. 38 at 2–3; ECF No. 59 at 2–4.) Plaintiffs also move to disqualify LeBlanc and Free

---

[4] References to page numbers refer to the ECF header.

[5] While Pederson and Brigida initially only appeared for Ballard in his official capacity (ECF Nos. 36–37), they have since stated that they are representing Ballard in his individual capacity as well (*see, e.g.*, ECF No. 49 at 8).

[6] The ORPC are found at Okla. Stat. tit. 5, ch. 1, app. 3-a.

based on a similar collection of federal statutes, rules of professional conduct, and case law. (*See* ECF No. 31 at 2–4.)

## Analysis

I. **Standard of Review**

   A. **Motions to Disqualify**

A court has "broad discretion" in determining whether an attorney should be disqualified. *Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1211 (10th Cir. 2000). As the party seeking disqualification, Plaintiffs bear the burden of proving its necessity. *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F. Supp. 1297, 1299 (D. Colo. 1994); *Alstatt v. Bd. of Cnty. Comm'rs*, No. CIV-22-811-D, 2023 WL 5019914, at *1 (W.D. Okla. Aug. 7, 2023); *Com. Com. Partners, LLC v. Miliken & Co.*, No. 22-cv-00020-JNP-PK, 2022 WL 17093650, at *3 (D. Utah Nov. 21, 2022).

Two sources of authority govern motions to disqualify in federal court. *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994). "First, attorneys are bound by the local rules of the court in which they appear." *Id.* In this Court, that means attorneys are expected to conduct themselves in accordance with the ORPC.[7] *See* LGnR 3-2. Second, motions to disqualify "are decided by applying standards developed under federal law" and are consequently "governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights." *Cole*, 43 F.3d at 1383 (citation modified).

Although this Court must consult the ORPC, it is "not bound by state-court interpretations of such rules." *Acct. Principals, Inc. v. Manpower, Inc.*, 599 F. Supp. 2d

---

[7] Federal district courts typically adopt the professional conduct rules of the state in which they sit. *Cole*, 43 F.3d at 1383.

3

1287, 1291 (N.D. Okla. 2008). But, "it would arguably create difficulties for practitioners in Oklahoma were we to adopt an interpretation of [the ORPC] different from that adopted by the Oklahoma Supreme Court." *Weeks*, 230 F.3d at 1214 (Briscoe, J., concurring). So, the Court applies federal standards "while attempting to avoid any inconsistencies with state law that would create procedural difficulties for practitioners in Oklahoma." *Acct. Principals*, 599 F. Supp. 2d at 1291 (citation modified).

When considering a motion to disqualify, a court "must carefully balance the interest in protecting the integrity of the judicial process with the right of a party to have counsel of its choice." *State Farm Mut. Auto. Ins. Co. v. Dowdy ex rel. Dowdy*, 445 F. Supp. 2d 1285, 1287 (N.D. Okla. 2006). "Under that standard, disqualification 'is such a drastic measure that it should be invoked if, and only if, the Court is satisfied that real harm is likely to result." *Grant v. Flying Bud Farms, LLC*, No. 22-CV-1-TCK-CDL, 2022 WL 2955147, at *4 (N.D. Okla. July 26, 2022) (quoting *Ark. Valley State Bank v. Phillips*, 2007 OK 78, ¶ 13, 171 P.3d 899, 905).[8] "Motions seeking the disqualification of opposing counsel are viewed with suspicion, and the Court must guard against the possibility that disqualification is sought to secure a tactical advantage in the proceedings." *Madden v. Elara Caring, LLC*, No. CIV-19-1178-G, 2021 WL 4301493, at *1 (W.D. Okla. Sept. 21, 2021) (citation modified).

### B.   Pro Se Litigants

As Plaintiffs are proceeding *pro se*, the Court liberally construes their filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). That said, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall*

---

[8] The Oklahoma Supreme Court has held that the "burden rests with the moving party to establish the likelihood of such harm by a preponderance of the evidence." *Id.* at 911, ¶ 23.

*v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Tenth Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted). As such, "the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

II.   **Plaintiffs' Motions**

    A.   **Motion to Bar Joint Representation**

As noted above, Plaintiffs' motion to bar joint representation rests primarily on the contention that ORPC 1.7 prevents attorneys from representing clients when such representation involves a concurrent conflict of interest. (ECF No. 13 at 2–3.) Plaintiffs contend a conflict is guaranteed here due to the severity of the allegations in the complaint and the certainty that "Defendants will present conflicting, adverse defenses, rendering joint representation ethically impossible." (*Id.* at 3–4 (outlining various conflicts Plaintiffs believe might arise due to each County Defendant's role in tax collection and enforcement).) Plaintiffs maintain that allowing joint representation "would severely prejudice Plaintiffs, compromise judicial integrity, and actively undermine public trust." (*Id.* at 2.)

The individual County Defendants, meanwhile, interpret Plaintiffs as arguing that their counsel is barred from representing them "in their individual and official capacities." (ECF No. 84 at 2.) County Defendants contend that Plaintiffs have failed to meet "their high burden to show" impropriety because they have not demonstrated real harm likely to result from the representation and because any "potential conflicts" have not matured into "actual" ones. (*Id.* at 2–3.) Counsel for County Defendants also indicate that their

5

clients have authorized them to represent County Defendants in their individual and official capacities. (*Id.* at 3.)

Having reviewed the parties' briefs, the Court concludes that Plaintiffs' motion should be denied.

### 1. ORPC 1.7

ORPC 1.7 addresses concurrent conflicts of interest. Relevant here, a concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . ." ORPC 1.7(a)(2); *see id.* cmt. 23 (noting "simultaneous representation of parties whose interests in litigation may conflict, such as . . . co-defendants, is governed by paragraph (a)(2)"). A concurrent "conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question." *Id.*

If a concurrent conflict arises, a lawyer shall not represent a client, unless

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.[9]

---

[9] "Thus, even when there exists a concurrent conflict of interest, that conflict can be waived so long as the requirements identified in Rule 1.7(b) are met." *Northrop v. Am. Express Co.*, No. 09-CV-005-TCK-TLW, 2010 WL 11561570, at *3 (N.D. Okla. Feb. 3, 2010).

ORPC 1.7(b). However, a lawyer "cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated," or "when it is unlikely that impartiality can be maintained." ORPC 1.7 cmt. 29. Additionally, in instances where a "potential conflict matures into an actual material conflict, separate representation would be required." *Johnson v. Bd. of Cnty. Comm'rs*, 85 F.3d 489, 493 (10th Cir. 1996) (citing Colorado's identical Rule 1.7).

### 2. Representation of Parties in Their Individual and Official Capacities

Applying similar principles, the Tenth Circuit has recognized that given "the potential conflict between the defenses available to a government official sued in his individual and official capacities, . . . separate representation for the official in his two capacities is a wise precaution." *Id.* (citation modified). This is because, when "a governmental official is sued in his official and individual capacities for acts performed in each capacity, those acts are 'treated as the transactions of two different legal personages.'" *Id.* (quoting *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 543 n.6 (1986)). That said, the Tenth Circuit has not held that this potential for conflict "mandates" separate representation. *Id.* (declining to adopt a per se rule on the matter). The court simply has held "that when a potential conflict exists because of the different defenses available to a government official sued in his official and individual capacities, it is permissible, <u>but not required</u>, for the official to have separate counsel for his two capacities." *Id.* (emphasis added). It is only once the potential conflict becomes an actual material conflict that "separate representation would be required." *Id.*

### 3.     **Plaintiffs Fail to Show a Concurrent Conflict of Interest**

Here, Plaintiffs have failed to carry their burden of showing the existence of a concurrent conflict of interest—particularly one in which there is a significant risk that counsel's joint representation of County Defendants will be materially limited to such an extent that the integrity of the judicial process will be harmed. For instance, Plaintiffs have shown no substantial discrepancy in County Defendants' positions; have shown no imminent and contentious litigation or negotiation between the parties; and have otherwise failed to demonstrate that impartiality between the parties is unlikely to be maintained.

In their motion, Plaintiffs argue joint representation of criminal defendants presents a grave risk of conflict. (ECF No. 13 at 3.) This is true. *See* ORPC Rule 1.7 cmt. 23. But this is a civil case, not a criminal one.[10] Further, Plaintiffs' remaining allegations fall into the category of potential conflicts. Until Plaintiffs demonstrate that these potential conflicts have matured into actual ones, the Court declines to employ such a drastic measure as disqualifying counsel and depriving the defendants of their representatives of choice. *See Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2017 WL 1019660, at *3 (D. Ariz. Mar. 16, 2017) ("the potential conflict is too remote to warrant prejudicing Defendants by requiring separate counsel"). The Court finds no disqualifying conflict between counsel's representation of the various County Defendants and finds no conflict in their representation of those defendants in their individual and official

---

[10] Plaintiffs cite various criminal statutes in their complaint (*see, e.g.*, ECF No. 2 at ¶ 36), but these "do not provide for a private right of action and are thus not enforceable through a civil action." *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007).

capacities. The Court will deny Plaintiffs' *Motion to Bar Joint Representation of Individual Defendants Due to Irreconcilable Conflicts of Interest* (ECF No. 13).

### B. Motion to Disqualify Brigida and Pederson

Plaintiffs also move to disqualify counsel for Matt Ballard from representing him in his individual capacity. (ECF No. 38.) Viewed with the requisite "suspicion" required for a motion to disqualify opposing counsel, *Madden*, 2021 WL 4301493, at *1, the Court finds that none of Plaintiffs' cited authority provides a basis to disqualify Brigida or Pederson.

#### 1. Oath Violations

For instance, Plaintiffs argue Brigida and Pederson "individually violate their sworn duties by representing Ballard in his personal capacity with public funds" and by "aiding violations of *McGirt*," which goes against their oath to uphold federal law. (ECF No. 38 at 5 (citing Okla. Stat. tit. 5, § 2).) Plaintiffs also complain that neither attorney has "produced valid oaths or bonds," which, Plaintiffs allege, voids their representation. (*Id.* at 6 (citing Okla. Stat. tit. 5, § 2; tit. 51, § 36.2A); ECF No. 59 at 3 (citing *Anderson v. City of Parsons*, 496 P.2d 1333 (1972)).)

None of the Oklahoma statutes Plaintiffs cite, however, support their argument. One statute merely sets out the oath that attorneys must take upon being admitted to practice. *See* Okla. Stat. tit. 5, § 2. Nothing in the oath stands for the proposition that counsel is prohibited from representing clients accused of violating a plaintiff's rights.

The other provides the loyalty oath required of every "officer and employee of the State of Oklahoma, or of a county, school district, municipality, public agency, public authority, or public district." *See* Okla. Stat. tit. 51, §§ 36.1, 36.2A. Again, nothing in the oath prohibits attorneys from representing clients accused of the acts Plaintiffs describe,

9

nor do the statutes otherwise require an attorney to produce such an oath in litigation. Finally, *Anderson*—a Kansas state court opinion—does not address attorneys' oaths. *See Anderson*, 496 P.2d at 1336 (addressing, among other things, conflicts of interest).

### 2. Misuse of Public Funds

Plaintiffs next argue the alleged impropriety of using public funds to "defend personal-capacity claims involving deliberate violations of federal law." (ECF No. 38 at 5 (citing Okla. Stat. tit. 51, § 156(F), and *Hafer v. Melo*, 502 U.S. 21 (1991)).) Plaintiffs also argue other statutes prohibit "representation of Ballard's personal crimes" and "willful violations." (ECF No. 59 at 2 (citing Okla. Stat. tit. 74, § 20i).) Yet, again, there is no support for Plaintiffs' arguments.

The first statute Plaintiffs cite relates to providing health care information when a written notice filed under the Oklahoma Governmental Tort Claims Act demands relief for personal injuries—something utterly irrelevant to this case. Okla. Stat. tit. 51, § 156(F). The second outlines the requirements when an agency or executive branch official obtains private legal representation. Okla. Stat. tit. 74, § 20i(A). It does nothing to vitiate other state laws requiring the Attorney General to represent employees in appropriate circumstances. *See* Okla. Stat. tit. 74, § 20f. Finally, the Supreme Court in *Hafer* did not hold—as Plaintiffs allege—that "[p]ublic funds cannot lawfully be utilized to defend personal-capacity claims involving deliberate violations of federal law." (ECF No. 38 at 5.) Rather, in *Hafer*, the Supreme Court held "that state officials sued in their individual

capacities are 'persons' for purposes of [42 U.S.C.] § 1983." *Hafer*, 502 U.S. at 23. Nothing in *Hafer* supports Plaintiffs' arguments.[11]

### 3. Conflicts under the ORPC

Plaintiffs also maintain that counsel's representation of Ballard violates ORPC 1.7 and 1.13. (ECF No. 38 at 6.)

As it relates to ORPC 1.7, Plaintiffs have failed to show any concurrent conflict in the representation of Ballard in his individual and official capacities. Whatever the potential for conflict, Plaintiffs have brought forward no facts showing any actual material conflict, and an initial review of Ballard's motions to dismiss (ECF Nos. 39 and 49) reveals none.

Likewise, Plaintiffs fail to explain how ORPC 1.13 reveals a conflict. Among other things, Rule 1.13 guides attorneys on how to act when they learn that someone associated with an organizational client intends to act in violation of legal obligations or laws in a way that is likely to cause substantial injury to the organization. *See* ORPC 1.13(b)–(e). The rule does not require disqualification of Ballard's counsel in this case.[12]

### 4. Fraud on the Court

Finally, Plaintiffs argue that "Brigida and Pederson's deliberate refusal to disclose funding sources or clarify representation scope constitutes intentional fraud on the court,

---

[11] Plaintiffs' arguments regarding *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), are similarly unsupported. (ECF No. 38 at 4, 6.) In *Harlow*, the Supreme Court discussed the contours of the qualified immunity available to Presidential aides. *Harlow*, 457 U.S. at 809, 813–19. *Harlow* provides no basis to disqualify counsel.

[12] In Plaintiffs' reply brief, they also cite "*In re Riddle*, 857 P.2d 1233, 1237, Okla. 1993" for the proposition that "Okla. RPC 1.13 requires acting in Oklahoma's interest, not Ballard's." (ECF No. 59 at 3.) The Court cannot find an Oklahoma State Court case with this citation. There is an Arizona Supreme Court opinion, but it addresses neither conflicts nor ORPC 1.13. *See In re Riddle*, 857 P.2d 1233 (Ariz. 1993).

warranting sanctions under Fed. R. Civ. P. 11 and investigation for obstruction under 18 U.S.C. § 1503." (ECF No. 38 at 6 (emphasis omitted).) But Plaintiffs do not cite any law that requires counsel to "disclose funding sources" or that allows them to demand a criminal investigation in a civil case. The rest of Plaintiffs' arguments similarly lack merit.

"Fraud on the court is fraud that is 'directed to the judicial machinery itself,' and it occurs 'where the impartial functions of the court have been directly corrupted.'" *Quarrie v. Bd. of Regents for N.M. Inst. of Mining & Tech.*, No. 24-2050, 2025 WL 324714, at *3 (10th Cir. Jan. 29, 2025) (unpublished)[13] (quoting *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985)). It requires a showing of intent to deceive or defraud the Court. *Id.* Generally, "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court." *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002) (internal quotations omitted). Plaintiffs have made no such showing.

Plaintiffs have further failed to show any entitlement to relief under Fed. R. Civ. P. 11. As a preliminary matter, Plaintiffs have failed to comply with Rule 11's safe harbor requirements.[14] *See* Fed. R. Civ. P. 11(c)(2). Even if they had, they have not pointed to any filings that run afoul of Rule 11(b),[15] nor have they adequately explained why such alleged violation warrants disqualification.

---

[13] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[14] While this Court retains its inherent power to impose sanctions, *Chambers v NASCO, Inc.*, 501 U.S. 32 (1991), this does not excuse Plaintiffs from complying with Rule 11 when seeking Rule 11 sanctions.

[15] Rule 11(b) requires that an attorney certify that to the best of their knowledge, a pleading or motion (1) is not presented for any improper purpose; (2) includes only claims and defenses warranted by existing law or by a nonfrivolous argument for *(continued on next page)*

The Court will deny Plaintiffs' *Emergency Motion to Disqualify Counsel Alejandra J. Brigida and Devan A. Pederson from Representing Defendant Matt Ballard in his Personal Capacity and for Sanctions* (ECF No. 38).

### C. Motion to Disqualify LeBlanc and Free

Lastly, the Court considers Plaintiffs' motion to disqualify counsel for County Defendants, where Plaintiffs "demand this Court stop [them] from illegally defending Rogers County officials" who have purportedly acted contrary to *McGirt*. (ECF No. 31 at 1.) Plaintiffs make many of the same arguments as in their motion to disqualify Ballard's counsel (*id.* at 1–3), and the Court rejects those arguments for the same reasons.[16]

Plaintiffs further argue that counsel have been "[o]mitting official vs. personal capacity distinctions," warranting sanctions under Rule 11. (*Id.* at 3.) Counsel, however, have been clear that they appear for their clients in both capacities. (ECF Nos. 25–26.) Their filings similarly distinguish between individual and official capacities. (ECF Nos. 82–83). Plaintiff has shown no "fraud" or "deception" on the Court.

The Court, therefore, will deny Plaintiffs' *Motion to Disqualify Counsel and for Sanctions* (ECF No. 31).

---

extending, modifying, or reversing existing law; (3) includes factual contentions that have evidentiary support or are likely to after reasonable investigation/discovery; and (4) includes denials of factual contentions warranted by evidence or reasonably based on belief or lack of information. Fed. R. Civ. P. 11(b)(1)–(4).

[16] Plaintiffs also make various arguments regarding the purported impartiality of Chief Judge John F. Heil, III, and the entirety of "Oklahoma's judiciary." (ECF No. 31 at 3.) Judge Heil has separately addressed Plaintiffs' motion to recuse (ECF No. 57), and no other motions to reassign are pending. Plaintiffs' vague assertions of "systemic conflict" provide no additional bases on which to disqualify opposing counsel.

## Conclusion

IT IS THEREFORE ORDERED that the *Motion to Bar Joint Representation of Individual Defendants Due to Irreconcilable Conflicts of Interest* (ECF No. 13) is DENIED; the *Emergency Motion to Disqualify Counsel Alejandra J. Brigida and Devan A. Pederson from Representing Defendant Matt Ballard in his Personal Capacity and for Sanctions* (ECF No. 38) is DENIED; and the *Motion to Disqualify Counsel and for Sanctions* (ECF No. 31) is DENIED.

ORDERED this 4th day of August, 2025.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT